FILED'09 JUL 21 16:16USDC-ORP

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROZALIA JORDAN,

            Plaintiff,

            v.

STATE OF OREGON DEPARTMENT OF
HUMAN SERVICES, WASHINGTON
COUNTY DISABILITY AGING AND
VETERANS SERVICES; and JOE EASTON,
SEAN RUSAW, VICKIE SHAFFER, and
MICHAEL BELLISH, in their individual
capacities,

            Defendants.

Civil No. 07-940-HA

OPINION AND ORDER

———————————————————

HAGGERTY, District Judge:

      Plaintiff Rozalia Jordan brings a Complaint against defendants asserting claims under 42

U.S.C. § 1983; and for Malicious Prosecution, Wrongful Institution of Civil Proceedings, Intentional

Infliction of Emotional Distress, and Intentional Interference with Employment Agreement.

Defendants filed a Motion for Partial Summary Judgment [107] and oral argument was heard on July

7, 2009.  For the following reasons, defendants' motion is granted in part, and denied in part.

1 - OPINION AND ORDER

**FACTUAL BACKGROUND**

The following facts are undisputed unless otherwise noted and are stated in the light most favorable to plaintiff. Plaintiff has worked with disabled and elderly people for almost her entire life. She operated adult foster homes from 1993 to 2003. She then worked as a caregiver for Quad, Inc., a non-profit organization that provides care for quadriplegics, from November 2004 to January 2005.

The Department of Human Services (DHS) is an agency for the state of Oregon that helps manage and disperse Medicaid money used to care for disabled adults. Defendant Sean Rusaw was a case manager for DHS from August 2002 to October 31, 2006.

Defendant Joe Easton was the In-Home Services Manager for the Office of Seniors and People with Disabilities from May 2005 to April 23, 2008. Easton was charged with the duty to decide whether to uphold DHS's recommendations regarding whether to terminate a homecare worker's provider number (WPN). *See* Or. Admin. R. (OAR) 411-031-0020(26) (stating a "provider number" is given when a homecare worker is authorized "to work as a provider employed by the client, for the purpose of receiving payment for authorized services").

Defendant Michael Bellish was the District Manager for Seniors and People with Disabilities from 2004 to October 2008.

Defendant Vickie Shaffer works for DHS's Adult Protective Services (APS). APS investigates cases of abuse and/or neglect regarding disabled adults.

Doris Bailey is a partial quadriplegic who receives Medicaid benefits. Rusaw worked as Bailey's case manager from September 30, 2004 to March 14, 2006. Plaintiff began working for Bailey in January 2005.

While working for Bailey, plaintiff believed the hours authorized for Bailey's care were insufficient and she notified Rusaw of this problem. Plaintiff began submitting time records reflecting more hours than were authorized by DHS. Plaintiff says that she wanted to be honest in her reporting and did not expect payment for the unauthorized hours. Rusaw told plaintiff to stop billing DHS for more hours than authorized and allegedly ignored requests from Bailey and plaintiff to review Bailey's food stamp allotment. According to Bailey, Rusaw told her "I didn't think you had the brains to figure [the stamps] out," and once entered Bailey's home without knocking, caused her to spill hot water on herself, and then laughed at her. Bailey Decl. ¶ 6, ¶ 17.

At one point, Bailey misplaced her credit card and requested that plaintiff purchase home health supplies for Bailey on plaintiff's debit card. Plaintiff submitted receipts for reimbursement from DHS without any objection from Rusaw through September 2005.

In July 2005, Bailey was hospitalized for ulcers. Bailey's doctor told her that she required twenty-four hour care, but plaintiff was only authorized to provide care for seven hours. Plaintiff contacted Rusaw to arrange for twenty-four hour care, but Rusaw refused. Bailey was released from the hospital and Rusaw arranged a meeting with Bailey and his supervisor, Tracy Kelly, on August 17, 2005. After the meeting, Rusaw and Kelly submitted an "Exceptional Rate Request" for plaintiff's additional hours, but Easton denied the request.

Plaintiff then filled out an application to license her home as an adult foster home. Rusaw inspected and approved plaintiff's home for safety concerns on September 6, 2005. Rusaw told Bailey that if plaintiff began operating a licensed adult foster home, then Bailey would need to give up her apartment. Bailey told him that she refused to give up her apartment.

On September 14, 2005, DHS approved Bailey's request to receive twenty-four hour care from a live-in homecare worker. Plaintiff then moved in with Bailey.

On October 10, 2005, Rusaw sent plaintiff a letter notifying her that she could no longer report more hours than authorized and could not purchase Bailey's supplies with plaintiff's debit card. Plaintiff responded to Rusaw's letter by sending letters to DHS on October 13, October 27, and November 10, 2005 complaining about Rusaw, Easton, and DHS's handling of Bailey's case.

In November 2005, Bailey was admitted to the Rehabilitation Institute of Oregon (RIO). Defendants believed that plaintiff reported hours during the time that Bailey was at RIO, however, plaintiff asserts that the entire 199 hours listed on her time sheet were worked prior to Bailey's admission to RIO. Plaintiff contacted Rusaw on November 22, 2005 to schedule Bailey's transport from RIO, and when she received no response, complained to the Home Care Commission.

When Bailey was released on December 6, 2005, plaintiff moved Bailey into plaintiff's home. The parties dispute whether plaintiff notified DHS about the move into plaintiff's home. Bailey intended to only visit for the holiday season and she continued to pay rent at her apartment. Bailey later requested to extend her visit beyond the holidays, and plaintiff agreed.

In February 2006, plaintiff contacted Rusaw and told him that Bailey was temporarily staying with her. Rusaw then contacted APS and Shaffer was assigned to Bailey's case.

On February 17, 2006, Rusaw and Shaffer made an unannounced visit to plaintiff's home to interview plaintiff. Plaintiff told Shaffer that Bailey had been living with her since she left RIO, that she occasionally left plaintiff alone, and that she had paid an unlicensed caregiver to stay with Bailey while she was away.

Shaffer then contacted the police because she allegedly believed plaintiff was operating an unlicensed adult foster home. The Washington County Sheriff's Office responded and cited plaintiff under Or. Rev. Stat. (ORS) 443.991 (operating an unlicensed adult foster home is a Class C

misdemeanor). Shaffer then allegedly sent a report to Bellish describing the events and asking him to terminate plaintiff's WPN.

The Washington County District Attorney's Office prosecuted plaintiff in a two-day criminal trial that ended in acquittal from the bench. The trial judge stated that: "[T]his case should not have been issued. It's a travesty to waste the taxpayers' money trying it." Damore Decl., Ex. 37, at 2. Plaintiff asserts that Shaffer pushed the district attorney to prosecute.

DHS administratively terminated plaintiff's WPN for fiscal improprieties and failure to provide services as required. An administrative law judge reversed the agency's decision and the agency did not appeal.

Following the administrative proceeding, plaintiff was required to reapply for her WPN. Defendants assert that this was merely a mistake and that Easton reversed the requirement once he discovered the error. Thereafter, plaintiff resumed work for Bailey in March or April 2007.

Plaintiff contends that defendants had no legitimate reason to revoke plaintiff's WPN, and had no probable cause to believe she was operating an adult foster home. She asserts that no other home care worker was prosecuted or had her WPN terminated because the worker was providing care in her own home. Plaintiff claims that defendants prosecuted her maliciously for personal reasons or in retaliation for her complaints.

## STANDARDS

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see Bahn v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). The moving party carries the initial burden of proof and meets this burden by identifying portions of the record on file that demonstrate the absence of any genuine issue

of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the initial burden is satisfied, the burden shifts to the non-moving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.*

The court must view the evidence in the light most favorable to the non-moving party. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (citations omitted). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *MetroPCS, Inc. v. City & County of S.F.*, 400 F.3d 715, 720 (9th Cir. 2005) (citation omitted). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981) (citing Fed. R. Civ. P. 56(c)).

Deference to the non-moving party has limits. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [non-moving party's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). Where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citation omitted).

## DISCUSSION

Defendants rely on this court finding probable cause to obtain summary judgment on plaintiff's equal protection, malicious prosecution, and wrongful institution of civil proceedings claims. Based on the parties' briefs and argument elicited at oral argument, this court finds that no probable cause existed at the time plaintiff was arrested and prosecuted for operating an unlicensed foster home.

In Oregon, probable cause exists for initiating a criminal proceeding if the decision maker "reasonably believes that the person accused has acted in a certain manner and correctly believes that

such act constitutes the offense charged." *Shoemaker v. Selnes*, 349 P.2d 473, 476 (Or. 1960); *see also* ORS 131.005(11) ("'Probable cause' means that there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it."). Acquittal is not prima facie evidence of a lack of probable cause. *Shoemaker*, 349 P.2d at 476.

The applicable statute at the time plaintiff was charged with operating an unlicensed foster home reads:

> (1) Every provider of adult foster care shall be licensed with the Department of Human Services before opening or operating an adult foster home caring for adult residents.
>
> (2) A provider must live in the home that is to be licensed or hire a resident manager to live in the home.
>
> (3) There must be a provider, resident manager or substitute caregiver on duty 24 hours per day in an adult foster home under the jurisdiction of the department of Human Services.

ORS 443.725 (2005). The statute defines adult foster home as "any family home or facility in which residential care is provided in a homelike environment for five or fewer adults who are not related to the provider by blood or marriage." ORS 443.705(1). Residential care is further defined as "the provision of room and board and services that assist the resident in activities of daily living, such as assistance with bathing, dressing, grooming, eating, medication management, money management or recreation." ORS 443.705(6).

When Rusaw and Shaffer visited plaintiff on February 17, 2006, they learned from plaintiff that she was providing room and board to Bailey, that plaintiff was assisting in Bailey's activities of daily living, that plaintiff left Bailey unattended,[1] and that plaintiff paid an unlicensed caregiver to

---

[1] Plaintiff's admission that she left Bailey unattended does not support the claim that plaintiff was operating an adult foster home. Rather, defendants offer this fact to show that if

care for Bailey. Defs.' Mem. at 10. Defendants argue that plaintiff violated the language of the statute because she was caring for Bailey, who is unrelated by blood or marriage, in plaintiff's home and was providing Bailey with the kind of residential care defined in the statute. *See* ORS 443.705(6). However, because Bailey did not give up her apartment and was staying with plaintiff temporarily for the holidays, it was unreasonable for defendants to believe she was operating an unlicensed foster home. Moreover, defendants' beliefs were unreasonable based on an exception to the statute.

Under ORS 443.715, an adult foster home does not include: "Any specialized living situation for persons with physical disabilities where [DHS] provides payment for personal care services other than to an adult foster home provider." ORS 443.715(2). Plaintiff falls within this exception because she provided personal care services to Bailey and received payment from DHS. Therefore, defendants did not have probable cause to believe plaintiff violated ORS 443.725.

1.      **Equal Protection**

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) (citation omitted).

When addressing equal protection claims, the court must first determine whether the government action disadvantaged a suspect class or impinged upon a fundamental right protected by the Constitution, thereby requiring strict scrutiny review. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 17 (1983). If not, the government action is subject to rational basis review.

_____

plaintiff was operating an adult foster home, she would have violated her duty of twenty-four hour care under ORS 443.725(3) by leaving Bailey alone. Interestingly, at the time, defendants were upset that plaintiff was providing Bailey with too much care.

*Id.* (stating that the government action must rationally further a "legitimate, articulated state purpose").

Under rational basis review, the court should not overturn the government's action unless "the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court must] conclude that the [government's] actions were irrational." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83 (2000) (citation omitted).

Although equal protection claims generally arise from governmental treatment of groups of citizens, equal protection claims can "in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.'" *Engquist v. Or. Dept. of Agric.*, 128 S. Ct. 2146, 2153 (2008). A class of one claim is permissible under the Equal Protection Clause when the plaintiff alleges that he or she had "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). If it appears that the individual is being singled out by the government, then "the specter of arbitrary classification is fairly raised, and the Equal Protection Clause requires a rational basis for the difference in treatment." *Id.* (citation omitted).

To prevail on a selective enforcement claim under the Equal Protection Clause, plaintiff must demonstrate that the government's enforcement had a discriminatory effect and was motivated by a discriminatory purpose. *Rosenbaum v. City & County of S.F.*, 484 F.3d 1142, 1152 (9th Cir. 2007) (citation omitted). "Selective enforcement of valid laws, without more, does not make the defendants' action irrational." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 188 (9th Cir. 1995). Plaintiff must show that similarly situated individuals were not prosecuted and that the government's particular course of action was taken because of the adverse effects upon plaintiff. *Rosenbaum*, 484

F.3d at 1153 (citations omitted).  However, if defendants can prove probable cause existed for the underlying criminal prosecution, then this evidence suggests that the prosecution would have occurred regardless of the retaliatory motive.  *Hartman v. Moore*, 547 U.S. 250, 261 (2006).

Because plaintiff does not claim that she is part of a suspect class, she seeks to prevail under a "class of one" theory that requires rational basis review.  Plaintiff argues that her class of one claim can be maintained because her treatment was based on improper subjective motives.  Resp. at 13; *see Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936 (9th Cir. 2004), *overruled on other grounds by Action Apt. Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1025 (9th Cir. 2007).

In *Squaw Valley*, the plaintiffs, who operated a ski resort, complained that government regulators subjected them to more formal regulatory and enforcement action for their failure to comply with water quality standards than similarly situated dischargers.  375 F.3d at 943.  Although the court found that plaintiffs failed to present evidence to show that other dischargers were similarly situated, the court nevertheless held that defendants had a rational basis for their actions against plaintiffs based on the resort's size, activity, and history of non-compliance.  *Id.* at 944-45.  Therefore, the court determined that plaintiffs' equal protection claim could only survive if plaintiffs proved that the defendants' actions were motivated by other personal or pretextual reasons.  *Id.* at 945.

If a plaintiff can demonstrate that (1) the defendants' proffered rational basis was objectively false, or (2) that the defendants' actions were based on an improper motive, then summary judgment is inappropriate.  *Id.* at 946; *see also Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 591 (9th Cir. 2008) (stating that for a selective enforcement claim, plaintiff can demonstrate that the defendants' alleged rational basis for their actions is a pretext for an impermissible motive).  In *Squaw Valley*, the court found triable issues of fact regarding one of the defendant's motives based on his genuine

animosity toward the plaintiffs and his inability to recall any instance when plaintiffs did not comply

with the water quality standards. *Id.* at 947. However, the other defendant was entitled to summary

judgment because plaintiffs had no evidence to show that his decisions were based on personal

animosity. *Id.* at 948.

In this case, plaintiff asserts that Rusaw had a very poor relationship with plaintiff and that he

was "unresponsive, reluctant to admit or correct his own mistakes, and failed to authorize the type of

care Bailey was entitled by law to receive." Resp. at 15. Plaintiff contends that she and Bailey

complained about Rusaw several times and that his behavior worsened after her complaints. *Id.*

This showing is enough for a jury to reasonably conclude that Rusaw had genuine animosity towards

plaintiff and that his actions were motivated by an improper purpose. Moreover, because this court

finds that no probable cause existed for the criminal prosecution, defendants are not entitled to

summary judgment on plaintiff's selective prosecution claim.

## 2.    First Amendment Retaliation

To establish a First Amendment retaliation violation, plaintiff must show that defendants

deterred or chilled her constitutionally protected speech and such deterrence was a substantial or

motivating factor in defendants' conduct. *See Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d

1283, 1300 (9th Cir. 1999); *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 901 (9th Cir. 2008)

(stating that a plaintiff must prove the defendants' desired chilling effect was a but-for cause of

defendants' action) (citation omitted). If plaintiff makes out her prima facie case, then the burden

shifts to defendants to prove they would have taken the action absent the protected conduct.

*Hartman*, 547 U.S. at 260-61. If defendants made independent and principled decisions separate

from plaintiff's speech, then plaintiff did not suffer any constitutional injury. *See Lakeside-Scott v.*

*Multnomah County*, 556 F.3d 797, 805 (9th Cir. 2009).

To prove retaliatory prosecution, plaintiff must demonstrate the absence of probable cause and show that defendants' unconstitutional inducement "infected the prosecutor's decision to bring the charge." *Hartman*, 547 U.S. at 265. If plaintiff proves that no probable cause existed, then a jury may be able to infer retaliation. *See id.* at 261 (stating that if no probable cause exists, that will "tend to reinforce the retaliation evidence and show that retaliation was the but-for basis for instigating the prosecution").

Because this court finds that no probable cause existed, defendants are not entitled to summary judgment on the retaliatory prosecution claim.

Defendants assert that they would have terminated plaintiff's WPN absent her complaints about DHS and that this decision should be given absolute immunity. According to the relevant regulation, defendants could lawfully suspend or revoke plaintiff's WPN if she "commit[ted] fiscal improprieties" or "fail[ed] to provide services as required." OAR 411-031-0050(2). DHS defines fiscal improprieties as:

> financial misconduct involving the client's money, property or benefits. Improprieties include, but are not limited to, financial exploitation, borrowing money from the client, taking the client's property or money, having the client purchase items for the Homecare Worker, forging the client's signature, falsifying payment records, claiming payment for hours not worked, or similar acts intentionally committed for financial gain.

OAR 411-031-0020(14). DHS also states that a homecare worker's failure to provide services as required occurs when he or she "does not provide the services to the client as described in the service plan authorized by [DHS]." OAR 411-031-0020(32).

While prosecutors, in their exercise of discretion, are absolutely immune from liability for their decisions to prosecute, public officials are only entitled to absolute immunity in exceptional circumstances where immunity is essential for the conduct of the public business. *Hartman*, 547 U.S. at 262; *Butz v. Economou*, 438 U.S. 478, 507 (1978). One such exceptional circumstance is

when a federal or state agency assumes a role in an administrative proceeding that is "analogous to that of a judge or prosecutor in a traditional trial setting." *Bothke v. Floor Eng'rs & Constructors, Inc.*, 713 F.2d 1405, 1410 (9th Cir. 1983), *vacated on other grounds*, *Davis v. Scherer*, 468 U.S. 1201 (1984); *see Butz*, 438 U.S. at 516 (holding that officials from Department of Agriculture who were "responsible for the decision to initiate or continue a proceeding subject to agency adjudication" were entitled to absolute immunity); *Romano v. Bible*, 169 F.3d 1182, 1187 (9th Cir. 1999) (holding that Gaming Control Board was entitled to immunity because it conducted investigations and decided whether to file complaints like a prosecutor); *Sellars v. Procunier*, 641 F.2d 1295, 1303 (9th Cir. 1981) (holding that parole board officials were entitled to absolute immunity for decisions to grant, deny, or revoke parole because their duties were comparable to a judge's responsibilities).

Agency officials, like prosecutors, should be afforded absolute immunity for discretionary decisions regarding whether to initiate a proceeding or to seek sanctions. *Swift v. California*, 384 F.3d 1184, 1192 (9th Cir. 2004); *see Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 924 (9th Cir. 2004) (stating that decisions regarding whether to initiate disciplinary proceedings or revoke a physician's license should be afforded protection as quasi-judicial functions) (citations omitted); *Miller v. Gammie*, 335 F.3d 889, 898 (9th Cir. 2003) (recognizing absolute immunity for social workers for the "discretionary, quasi-prosecutorial decisions to institute court dependency proceedings"). However, non-discretionary decisions will not be afforded the same protections. *See Swift*, 384 F.3d at 1193 (holding that absolute immunity is improper for the non-discretionary act of making a recommendation to the parole board to initiate parole revocation proceedings).

After reviewing the evidence in the light most favorable to plaintiff, the facts show that plaintiff recorded more hours than authorized in an effort to comply with the language of the

voucher.  Plaintiff points to the "Provider Certification" section that reads: "Any falsification or concealment of a material fact may be prosecuted under federal and state laws."  Rusaw Decl., Ex. 1 at 1.  Additionally, plaintiff's debit card purchases seem reasonable in light of Bailey's needs and defendants failed to demonstrate that plaintiff continued to improperly use her debit card after Rusaw's October 2005 letter.  The terms of Bailey's service plan are also ambiguous and do not specify where Bailey's care must be provided.  Summary judgment is inappropriate based on the allegation that plaintiff committed fiscal improprieties and failed to provide services as required.

This court further finds that defendants failed to establish that the decision to terminate plaintiff's WPN was functionally equivalent to a prosecutorial decision.  Defendants did not demonstrate that their roles mirrored the level of discretion present in judicial decision-making. Although termination of plaintiff's WPN could be viewed as a discretionary administrative sanction, defendants have not sufficiently demonstrated that absolute immunity is necessary in this case.

Plaintiff has failed to demonstrate any causal link between any of the individual defendants and the decision to require plaintiff to reapply for her WPN.  Defendants' Partial Motion for Summary Judgment is therefore granted as to the retaliatory re-application claim and denied as to the retaliatory prosecution and termination claims.

3.     **Substantive Due Process**

For a substantive due process claim under the Fourteenth Amendment, plaintiff must demonstrate that she was deprived of a constitutionally protected liberty or property interest.  *See Dittman v. California*, 191 F.3d 1020, 1029 (9th Cir. 1999).  The Supreme Court has recognized that a person's right to choose his or her field of employment is protected under the Constitution.  *Id.* (listing cases).  Thus, plaintiff can make out a substantive due process claim if she is "unable to

pursue an occupation and this inability is caused by government actions that were arbitrary and lacking a rational basis." *Engquist v. Or. Dept. of Agric.*, 478 F.3d 985, 997 (9th Cir. 2007).

Plaintiff alleges that when defendants revoked her WPN, she was deprived of her ability to pursue work in her chosen field. Resp. at 40. Although defendants contend that plaintiff was still able to pursue work providing care to disabled adults, plaintiff argues that her chosen career as a homecare worker requires providing one-on-one care for a single person and developing a close relationship with that person. Resp. at 41. Thus, a genuine issue of material facts exists regarding whether the deprivation of plaintiff's employment options was sufficient to establish a substantive due process claim. Defendants' Partial Motion for Summary Judgment is denied as to plaintiff's substantive due process claim.

## 4.     Malicious Prosecution[2]

To establish a malicious prosecution claim, plaintiff must show that the defendants prosecuted her with malice and without probable cause, and that they did so for the purpose of denying her equal protection or another particular constitutional right. *Freeman*, 68 F.3d at 1189. Plaintiff must also prove that the prior criminal proceeding terminated in her favor. *See Heck v. Humphrey*, 512 U.S. 477, 484 (1994). However, the mere fact that a prosecution was unsuccessful does not mean it was unsupported by probable cause. *Freeman*, 68 F.3d at 1189.

---

[2] Plaintiff brings federal and common law malicious prosecution claims as well as a claim for wrongful initiation of civil proceedings. Because the claims contain identical elements, the above discussion regarding the federal claim also extends to the common law and civil claims. *See Compton v. Myers*, 558 P.2d 355, 356 (Or. Ct. App. 1976) (stating that plaintiff must prove that the defendants "commenced or maintained the prosecution, that it terminated favorably to the plaintiff, that defendants had no probable cause to initiate or prosecute the action against him, that defendants had a malicious purpose in initiating or prosecuting the action, and that the plaintiff was damaged by their actions").

15 - OPINION AND ORDER

Additionally, plaintiff must rebut the presumption that the prosecutor exercised independent judgment and demonstrate that the defendants compromised the prosecutor's judgment. *Beck v. City of Upland*, 527 F.3d 853, 865 (9th Cir. 2008). Plaintiff can rebut this presumption by showing that the prosecutor was pressured to prosecute, the prosecutor was given false information, the prosecutor failed to use independent judgment to determine if probable cause existed, or that the officers acted maliciously or in bad faith when initiating the legal proceeding. *Id.* at 862-63. Generally, malice is a question of fact to be decided by a jury whereas the existence of probable cause is a question of law that can be decided by the court. *See Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1031 (9th Cir. 2008) (stating that the issue of malice focuses on the defendants' state of mind when initiating the legal proceeding while probable cause is determined on an objective basis).

Because this court finds no probable cause for the criminal prosecution, summary judgment also fails on this claim.

**5.      Claims as to Each Individual Defendant**

Under section 1983 claims, personal liability only attaches when the individual defendants participated in the constitutional violations. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Participation includes the defendant's affirmative acts, the defendant's participation in another's affirmative acts, and the defendant's omissions, when legally required to perform an act, that cause the constitutional violation. *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978) ("The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury."). *Respondeat superior* liability is inappropriate for section 1983 claims, *Polk County v. Dodson*, 454 U.S. 312, 325 (1981), however, a supervisor can be liable for "his own culpable action or inaction in the training,

supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation . . . or for conduct that showed a reckless or callous indifference to the rights of others." *Watkins v. City of Oakland, Cal.*, 145 F.3d 1087, 1093 (9th Cir. 1998) (citation omitted).

Defendants admit that Rusaw and Shaffer called the police to report plaintiff, *see* Defs.' Mem. at 16; therefore, their actions resulted in the plaintiff's prosecution, which is the basis for plaintiff's selective prosecution claim, First Amendment retaliatory prosecution claim, and malicious prosecution claims.

A jury could also find that Rusaw and Shaffer participated in plaintiff's substantive due process claim and First Amendment retaliatory WPN termination claim. In her role as an APS investigator, Shaffer participated in the decision to contact the police and forwarded her file to the district attorney. A jury could find that she reasonably should have known that her action could result in the termination of plaintiff's WPN. Similarly, Rusaw's action of alleging plaintiff committed fiscal improprieties and failure to provide services set into motion the subsequent termination of plaintiff's WPN. Although Rusaw and Shaffer did not directly participate in the decision to terminate plaintiff's WPN, their actions had a reasonable causal connection to the termination and they reasonably should have known plaintiff's WPN could be terminated. Rusaw and Shaffer are therefore entitled to summary judgment only as to plaintiff's First Amendment retaliation action regarding the decision to require plaintiff to reapply for her WPN.

Bellish and Easton, in their management roles at DHS as well as their direct participation in the WPN termination process, participated in the actions subject to plaintiff's substantive due process claim and First Amendment retaliatory termination of WPN claim. Plaintiff failed to demonstrate that Bellish or Easton participated in the decision to notify police and press charges against plaintiff. Although plaintiff alleges that they should be held responsible in their supervisory capacity, plaintiff

17 - OPINION AND ORDER

has not submitted evidence showing acquiescence in the decision to wrongfully press charges or a reckless indifference to plaintiff's rights. Bellish and Easton are therefore entitled to summary judgment as to plaintiff's selective prosecution claim, First Amendment retaliatory prosecution claim, retaliatory re-application claim, and malicious prosecution claims.

## CONCLUSION

For the foregoing reasons, defendants' Motion for Partial Summary Judgment [107] is GRANTED in part and DENIED in part. Because plaintiff is unable to demonstrate an causal link between defendants and the decision to require plaintiff to reapply for her WPN, defendants' motion is GRANTED as to all defendants on plaintiff's First Amendment retaliation claim related to re-application. Defendants' motion is GRANTED for Bellish and Easton as to plaintiff's selective prosecution claim, First Amendment retaliatory prosecution claim, and malicious prosecution claims. Defendants' motion is DENIED as to plaintiff's remaining First Amendment retaliatory prosecution claim, equal protection claims, substantive due process claim, and malicious prosecution claims as discussed.

IT IS SO ORDERED.

Dated this _21_ day of July, 2009.

ANCER L. HAGGERTY

United States District Judge